UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────

LARRY BROWN,

                    Petitioner,

    v.                                          Civil Action No.
                                                9:11-CV-00358 (GLS)

MICHAEL F. HOGAN,
  Commissioner, New York State Office
of Mental Health;

DONALD SAWYER,
  Director, Central New York Psychiatric
Center;

ERIC T. SCHNEIDERMAN,
  New York State Attorney General,

                    Respondents.


────────────────────────────────
APPEARANCES:

DAVID M. LEVINE, ESQ.
Mental Hygiene Legal Service - Albany Office
Third Judicial Department
40 Steuben Street, Suite 501
Albany, New York 12207-2109

HON. ERIC T. SCHNEIDERMAN          LISA E. FLEISCHMANN, ESQ.
Office of the Attorney General     Assistant Attorney General
120 Broadway
New York, New York 10271

**HON. GARY L. SHARPE,**
**Chief Judge**

## DECISION and ORDER

Petitioner Larry Brown filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his confinement at the Central New York Psychiatric Center ("CNYPC").  Dkt. No. 1.[1]  On July 15 and 29, 2011, the Attorney General of the State of New York, acting on behalf of the Respondents, filed a response to the petition and the relevant state court records.  Dkt. Nos. 6-9, 12.[2]  For the reasons that follow, the petition is dismissed without prejudice.

## I.    Relevant Background

In July 1993, Petitioner pleaded guilty, in Tompkins County Court, to two counts of first degree sodomy and one count of first degree rape. *See People v. Brown*, 235 A.D.2d 563, 563 (3d Dep't. 1997).  Petitioner was sentenced as a second felony offender to a term of 7 ½ to 15 years in prison.  *Id.*  On January 2, 1997, Petitioner's conviction was affirmed, and on April 10, 1997, the New York Court of Appeals denied leave to appeal.  *Id.* at 563-65, *lv. denied* 89 N.Y.2d 1032 (1997).  Petitioner's

---

[1]    On April 1, 2011, David M. LeVine, Esquire, entered his appearance on behalf of Petitioner.  Dkt. No. 2.

[2]    Petitioner was granted permission to file a reply/traverse on August 12, 2011.  Dkt. No. 14.  To date, he has not done so.

sentence was set to expire on February 25, 2007.  Dkt. No. 1 ¶ 2.

On February 7, 2007, Wyoming County Supreme Court Justice Mark H. Dadd signed an Order to Show Cause and Order of Appointment in connection with an application filed by Attica Correctional Facility Superintendent James Conway seeking an order to involuntarily hospitalize Petitioner in a secure psychiatric hospital maintained by the Office of Mental Health ("OMH") pursuant to Correction Law § 402(1).  *In re Larry TT*, 24 Misc. 2d 1206(A), 2009 WL 1810355, at *2 (N.Y. Sup. Ct. Jun. 25, 2009).  Two physicians were appointed to examine Petitioner. *Id.*  Justice Dadd struck the portion of the order that authorized the Commissioner of OMH to retain Petitioner as an involuntary patient in a psychiatric center pending a hearing and determination on the application.  *Id.* at *2-3.

On February 20, 2007, the Mental Hygiene Legal Service ("MHLS") was advised that the appointed physicians refused to examine Petitioner. *Id.* at *2.  Two days later, the Attorney General's Office filed a new Order to Show Cause seeking the same relief requested in the February 7, 2007 order, but naming two different physicians to examine Petitioner. Justice Dadd did not sign the new proposed Order to Show Cause, and returned the papers to the Office of the Attorney General.  *Id.*

3

On February 23, 2007, Superintendent Conway filed an Application for Involuntary Admission on Medical Certification based upon written certifications by two physicians that Petitioner suffered mental illness for which hospitalization was appropriate, that Petitioner's illness posed a substantial threat of harm to himself or others, and that hospitalization could reasonably be expected to improve his condition or prevent deterioration of his condition.  *Id.*  Petitioner was released from Attica Correctional Facility and involuntarily admitted to CNYPC pursuant to Correction Law § 402(9).[3]  *Id.* at *2, 5.

On February 26, 2007, the day after his sentence expired, Petitioner requested a hearing to determine whether he was in need of involuntary hospitalization.  His request was received by the court on March 6, 2007.  *Id.* at *3.

On February 27, 2007, Oneida County Supreme Court Justice Anthony F. Shaheen signed an order appointing V. Komareth, M.D. and K. Sangani, M.D. to examine Petitioner and report their findings to the court.  *Id.*  On March 5, 2007, Donald Sawyer, Ph.D., the Executive Director of CNYPC, filed a Notice of Application and Petition seeking an

---

[3]      The court found that although the application form referred to section 9.27 of the Mental Hygiene Law, the substance of the application was consistent with the state's assertion that the application was made pursuant to Correction Law § 402(9).  *Id.* at *2, 6.

4

order committing Petitioner to an OMH hospital for a period of six months

based upon the findings of the physicians.  *Id.* at *3.  The papers were

filed in Oneida County, the location of CNYPC.  *Id.*

On March 20, 2007, Justice Robert F. Julian signed an Order to

Show Cause filed on Petitioner's behalf by MHLS seeking dismissal of

the February 2007, application for his admission to CNYPC, dismissal of

the March 2007 application for commitment to CNYPC, and an order

releasing him from CNYPC and the custody of OMH.  *Id.*  On April 2,

2007, Justice Julian orally denied the motion during a court appearance,

but the decision was not reduced to writing.  *Id.* at *3-4.

On April 13, 2007, the Legislature enacted the Sex Offender

Management and Treatment Act, codified as Article 10 of the Mental

Hygiene Law ("MHL").  *State ex rel. Harkavy v. Consilvio*, 8 N.Y.3d 645,

651-52 (2007) ("*Harkavy II*"); N.Y. Mental Hyg. Law § 10.[4]  Under Article

10, sex offenders nearing the end of their prison terms are screened by

OHM physicians to determine if they have a "mental abnormality" that

would predispose them to re-offend.  *Harkavy II*, 8 N.Y.3d at 651 (citing

---

[4]        On June 5, 2007, the New York Court of Appeals determined that convicted
sex offenders who were directly transferred to psychiatric hospitals under Article 9 when
their sentences expired were entitled to the procedural protections set forth in the
newly-enacted Article 10.  *Harkavy II,* 8 N.Y.3d at 651-52.

N.Y. Mental Hyg. Law § 10.07).  Inmates who suffer from this kind of

mental abnormality, and who have difficulty controlling their behavior, are

referred to the Attorney General, who may then file a "sex offender civil

management petition" in supreme or county court.  *Harkavy II*, 8 N.Y.3d

at 651 (citing N.Y. Mental Hyg. Law § 10.06(a)).  The offender is then

entitled to a probable cause hearing and a jury trial to determine whether

he or she suffers from a "mental abnormality" within the meaning of the

statute.  N.Y. Mental Hyg. Law §§ 10.06(g), 10.07.  If the jury returns a

verdict finding mental abnormality, the court then must decide whether

the offender is a "dangerous sex offender requiring confinement" in a

secure OMH treatment facility, or "a sex offender requiring strict and

intensive supervision" by the Division of Parole.  *Harkavy II*, 8 N.Y.3d at

651 (citing N.Y. Mental Hyg. Law § 10.07(f)).[5]

---

[5]    On March 29, 2011, the court in *Mental Hygiene Legal Service v. Cuomo*, 785 F. Supp. 2d 205 (S.D.N.Y. 2011), found three provisions of Article 10 to be facially unconstitutional.  Section 10.06(k) was found facially unconstitutional because it provided for automatic detention of all individuals subject to Article 10, without a judicial proceeding to determine dangerousness.  *Id.* at 225-26.  Section 10.06(c) was found facially unconstitutional because it "authorized the fact-finder at a civil commitment trial to make a retroactive determination by clear and convincing evidence that certain non-sex crimes" were sexually motivated, and sexual motivation must instead be proven beyond a reasonable doubt.  *Id.* at 226-27.  Section 10.06(d) permitted detention following a civil commitment trial of individuals "charged with sex offenses but determined by a court to have been so incapacitated as to have been unable to help prepare their own defense, and therefore unable to stand trial."  *Id.* at 226.  This section was found facially unconstitutional "as it applies the label of 'sex offender'" to those never found guilty of a criminal offense beyond a reasonable doubt, based "only on a finding by 'clear and convincing evidence'" that the individual committed the conduct constituting the crime.  *Id.*  Petitioner's claims do not appear to implicate any of these provisions.

In December 2007, an OMH case review team reviewed Petitioner's records and concluded that he was a sex offender requiring civil management as defined in Article 10. *In re Larry TT*, 2009 WL 1810355, at *3. Based on that finding, the state filed an Article 10 petition for civil management in Oneida County Court on March 25, 2008, seeking a court order directing Petitioner's involuntary hospitalization at a secure facility maintained by OMH. *Id.* at *4.

On March 31, 2008, the Article 10 proceeding was removed from Oneida County to Tompkins County upon Petitioner's motion. *Id.* at *3. Petitioner consented to adjournment of the probable cause hearing, scheduled to begin on March 31, 2008, until a hearing could be scheduled in Tompkins County. *Id.* at *4. On July 16, 2008, the February 2007, proceedings then pending in Oneida County Court were transferred to Tompkins County, to "be continued there together with the related Article 10 proceeding." *Id.*

On September 16, 2008, the Honorable Elizabeth A. Garry signed an order memorializing Justice Julian's April 2007, decision denying Petitioner's motion to dismiss the proceedings against him. *Id.*

---

Petitioner's MHLS attorney filed a notice of appeal on October 7, 2008.

*Id.* Petitioner's time to perfect the appeal was extended to August 24,

2009. Dkt. No. 7, Attach. 14.

On February 17, 2009, Petitioner filed a motion in Tompkins County

Court seeking leave to renew his previous motion to dismiss the February

2007 proceedings. *In re Larry TT*, 2009 WL 1810355, at *4. He also

moved to dismiss both the February 2007, proceeding and the Article 10

proceeding. *Id.* On June 25, 2009, Petitioner's request for leave to

renew his prior motion was granted, but his motions to dismiss the

proceedings against him were denied. *Id.* at *5-8. The court found that

Petitioner's February 23, 2007, transfer from Attica Correctional Facility to

CNYPC was made pursuant to section 402(9) of the Corrections law, and

not pursuant to Article 9 of the Mental Hygiene Law. *Id.* at *5.

The court also rejected Petitioner's argument that the February 23,

2007, transfer violated *State ex rel. Harkavy v. Consilvio,* 7 N.Y.3d 607

(2006) ("*Harkavy I*") because that decision did not preclude the transfer of

an inmate nearing the end of his sentence pursuant to Correction Law §

402(9). *In re Larry TT*, 2009 WL 1810355 at *6. The Attorney General

commenced the original proceeding, pursuant to Correction Law §402(1),

eighteen days before Petitioner's sentence expired, but that proceeding

8

was never completed because the appointed physicians did not examine

Petitioner in accordance with the originally issued Order to Show Cause.

*Id.* The court ruled that these circumstances justified the Attorney

General's decision to proceed with an emergency transfer of Petitioner

pursuant to Correction Law §402(9), and noted that Petitioner did not

demand a hearing on whether these circumstances constituted an

emergency. *Id.*

The court then ruled that even if the February 23, 2007, transfer

was in violation of *Harkavy I*, "such a violation does not warrant the

release" of Petitioner. *Id.* at *6. Instead, if that transfer was ultimately

"deemed inappropriate under either Correction Law 402(9) or Mental

Hygiene Law Article 9, the petitioner should not be released but should

be afforded an appropriate commitment hearing." *Id.*

Additionally, the court ruled that any future proceedings against

Petitioner should be conducted under Article 10, and that the involuntary

commitment proceedings initiated in Wyoming and Oneida Counties were

"rendered moot and/or academic due to the commencement of the MHL

Article 10 proceeding." *Id.* at *7. Finally, the court ruled that Petitioner

qualified as a "detained sex offender" as defined in section 10.03(g)(5).

*Id.*

9

Petitioner appealed, and on December 3, 2009, the Appellate Division unanimously affirmed, finding first that the record supported the lower court's determination that Petitioner's February 2007, transfer "took place under the emergency provision of Correction Law § 402(9)." *In re Larry TT*, 68 A.D.3d 1229, 1230 (3d Dep't. 2009). The Appellate Division also held that Petitioner was a "[d]etained sex offender" as that term is defined in section 10.03(g)(5), that the provisions of Article 10 applied to Petitioner, and that a "hearing should be held expeditiously as provided by that statute." *Id*.

On April 6, 2010, the New York Court of Appeals dismissed Petitioner's application for leave to appeal the Appellate Division's decision affirming the denial of his motion to dismiss the Article 10 proceeding because that "portion of the order does not finally determine the proceeding within the meaning of the Constitution." *In re Larry TT.*, 14 N.Y.3d 825 (2010). Petitioner's motion for leave to appeal was "otherwise denied." *Id.*

On November 9, 2010, after several months of state court proceedings concerning disclosure of records in connection with the Article 10 proceedings, Petitioner waived the section 10.06 probable cause determination so that the case could "proceed to trial as soon as

10

possible." Dkt. No. 7, Attach. 33. On December 10, 2010, Judge Mulvey

issued an order directing that Petitioner "shall not be released from OMH

custody pending trial, absent a further order" from the court. Dkt. No. 7,

Attach. 34.

On March 31, 2011, Petitioner filed this federal petition for a writ of

habeas corpus. Dkt. No. 1. Then, on May 23, 2011, Petitioner's MHLS

attorney filed a state court petition for a writ of habeas corpus in

Tompkins County Supreme Court seeking his release from confinement

pending a civil commitment trial pursuant to section 10.07, in which he

acknowledged that he filed his current federal petition "as to the

constitutionality of the State's extension of MHL article 10" to him. Dkt.

No. 7, Attach. 40 ¶ 6.

The state habeas petition was denied on June 22, 2011. Dkt. No.

7, Attach. 43. The court found that (1) Petitioner chose to waive the

Article 10 probable cause hearing, and the terms of that waiver did not

reserve to him "any right to request, at a later date, a preliminary hearing

or any other hearing to test the validity of his confinement;" (2) the

"motions and strategies" of Petitioner and his counsel contributed to the

delay in the commencement of the Article 10 trial; and (3) the discovery

phase of the proceedings was almost complete, and the trial may

therefore move forward. *Id.* at 2-3.

II.    **The Petition**

Petitioner raises three substantive grounds for federal habeas relief: (1) his "administrative transfer to OMH without a pre-transfer hearing as to [his] need for admission to a psychiatric hospital" violated his procedural and substantive due process rights; (2) his "post transfer confinement by OMH without a hearing as to [his] need for admission to a psychiatric hospital" violated his right to procedural and substantive due process; and (3) the state court's extension of Article 10 to him pursuant to section 10.03(g)(5), and his ongoing confinement, without providing him with an "opportunity for a judicial determination as to [his] need for admission to a psychiatric hospital" violated his procedural and substantive due process rights. *See* Dkt. No. 1 at 7, ¶¶ 45-47.  Petitioner asks that this Court direct his release from state custody. *Id.* at 8.

III.    **Discussion**

A.  **AEDPA's exhaustion requirement**

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or

"circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii).  The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  *Jimenez v. Walker*, 458 F.3d 130, 148-49 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition.  Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (*per curiam*)); *Fama v. Comm'r. of Corr. Servs*., 235 F.3d 804, 808 (2d Cir. 2000).  The petitioner also must have used the proper procedural vehicle so that the state court may pass on the merits of petitioner's claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton v. Fillion*, No. 9:03-CV-1377, 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007).  Finally, a petitioner "shall not be deemed to have

13

exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

The exhaustion requirement applies to section 2254 petitions challenging civil commitment proceedings under Article 10.  *See, e.g., Buthy v. Comm'r of Office of Mental Health*, 818 F.2d 1046, 1051 (2d Cir.1987) (holding that petitioner could "challenge the fact of his pre-hearing confinement in the forensic unit, as opposed to the conditions of that confinement, only by petitioning for a writ of habeas corpus and after exhausting state remedies as required by 28 U.S.C. § 2254(b), (c) (1982)."); *Hunter v. Gipson*, 534 F. Supp. 2d 395, 398 (W.D.N.Y. 2008) ("Petitioning for a writ of habeas corpus, after fully exhausting state court remedies, is the appropriate method for an individual to challenge the fact or duration of his involuntary civil commitment to a psychiatric institution.").

### B.  Petitioner's claims are unexhausted.

Petitioner first raised his federal habeas claims in the state courts in the form of a motion to dismiss (1) the underlying application for his admission to CNYPC made on or about February 23, 2007; (2) the

application for his commitment to CNYPC made on or about March 5,

2007; and (3) the application for his involuntary hospitalization pursuant

to Article 10 made on March 25, 2008.  *See In re Larry TT*, 2009 WL

1810355, at *1.  But, as the Court of Appeals made clear, the Appellate

Division's decision affirming the denial of his motion to dismiss the Article

10 proceedings - which the court expressly found applied to Petitioner -

did not "finally determine the proceeding within the meaning of the

Constitution."  *In re Larry TT*, 14 N.Y.3d at 825.  No Article 10 trial had

been held by the time Respondent answered this petition on July 15,

2011, and there is no evidence that the Article 10 trial, or an appeal

therefrom, has occurred since, much less that there has been a final

determination in this matter.

     Although Petitioner filed a state habeas petition, that proceeding did

not result in proper exhaustion of his claims.  Petitioner argued in the

state habeas petition, as he does in this action, that his transfer from

Attica Correctional facility to CNYPC in February 2007, was illegal

because he was never afforded "an opportunity for a pre or post transfer

judicial determination as to whether he required care and treatment in a

psychiatric hospital" and, therefore, there was no legal basis for his

involuntary confinement under Article 10.  Dkt. No. 7, Attach. 40 ¶¶ 5-7.

15

The Tompkins County Supreme Court denied his state habeas petition
(Dkt. No. 7, Attach. 43), but there is no indication that Petitioner ever
appealed from that decision.  *See, e.g., People ex rel. Joseph II. v.
Superintendent of Southport Corr. Facility*, 15 N.Y.3d 126, 136 (2010)
(reversing Appellate Division's decision granting writ of habeas corpus in
relation to Article 10 proceeding); N.Y.C.P.L.R. § 5513(a) (noting that [a]n
appeal as of right must be taken within thirty days.").  Accordingly, there
has been no decision by the highest state court capable of reviewing the
claims raised in Petitioner's state court habeas petition.  *Baldwin,* 541
U.S. at 29.

Based on the foregoing, the exhaustion requirement has not been
met in this case, and Petitioner's petition is premature.  Nonetheless, the
Court must consider whether there is an absence of available State
corrective process (e.g., where there is no further state proceeding for a
petitioner to pursue) or whether circumstances exist that render that state
court process ineffective to protect Petitioner's rights (e.g. where further
pursuit would be futile).  28 U.S.C. § 2254(b)(1)(B)(i), (ii); *Lurie v. Wittner*,
228 F.3d 113, 124 (2d Cir. 2000).

Petitioner claims that an Article 10 trial will not afford him "the
opportunity for a determination as to [his] need for admission to an OMH

16

psychiatric hospital." Dkt. No. 1 ¶ 36. As previously noted, Petitioner has not appealed the state habeas court's finding that Petitioner waived his right to a probable cause hearing, in writing, on November 9, 2010, and that by signing the waiver, he "effectively consented to the direction contained" in the court's December 10, 2010, Order that "he shall not be released from OMH custody pending trial, absent a further order of the Court." Dkt. No. 7, Attach. 43 at 2.

In any event, the purpose of an Article 10 trial is to "determine whether the respondent is a detained sex offender who suffers from a mental abnormality." N.Y. Mental Hyg. Law § 10.07(a). If the fact-finder answers that question in the affirmative, the court must then determine whether the offender "is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision." *Id.* §10.07(a). Thus, Petitioner's need for admission and confinement into an OMH facility will be finally determined as part of the pending Article 10 proceedings.

Petitioner also states that his "ability to proceed to trial under article 10 since the New York Court of Appeals' denial of [his] motion for leave to appeal has been frustrated by the State's failure to disclosure [sic] documents and records" to his attorney. Dkt. No. 1 ¶ 38-44. But as the

state court noted in its decision denying Petitioner's state habeas petition,

the "causes for the delay in the commencement of the Article 10 trial do

not rest solely with the State since the motions made and strategies

employed by [Petitioner] and his counsel have contributed to the delay."

Dkt. No. 7, Attach. 43 at 3.

The timeliness of any subsequent habeas petition appears not to be

a concern in this case.  Under the AEDPA, federal habeas petitions

challenging a judgment of a state court are subject to a one-year statute

of limitations.  28 U.S.C. § 2244(d)(1).  The one-year period generally

begins to run from the date on which the state criminal conviction, or, in

this case, the challenged Article 10 proceeding, became final by the

conclusion of direct review or by the expiration of the time to seek direct

review.[6]  *See Id.* at (d)(1)(A).  Since Petitioner's Article 10 trial has not yet

commenced, direct review of his claims has necessarily not yet

concluded.  Thus, the one-year statute of limitations during which to file a

habeas petition would not appear to have begun to run.  *See Foster v.*

---

[6]     Other dates from which the limitations period may start to run are (1) the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, (2) the date on which the Supreme Court initially recognizes the constitutional right on which the petitioner bases his habeas application if the right is newly recognized and made retroactively applicable, and (3) the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence).  *See* 28 U.S.C. § 2244(d)(1)(B), (C), (D).

*Spitzer*, No. 07-CV-0103, 2007 WL 1531904, at *2 (N.D.N.Y. Mar. 5, 2007) ("[b]ased upon the information set forth [in his petition], it appears that Petitioner will have ample opportunity to timely file a § 2254 habeas Petition setting forth his claims once he has exhausted his State court remedies.").

Finally, if Petitioner's claims in the state courts are ultimately unsuccessful, a subsequent habeas petition should not run afoul of the "second or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits. *Burton v. Stewart*, 549 U.S. 147, 155 (2007) (*per curiam*); *Slack v. McDaniel*, 529 U.S. 473, 485-86 (2000); *Gandarilla v. Artuz*, 322 F.3d 182, 185-876 (2d Cir. 2003).

**WHEREFORE**, based upon the foregoing, it is hereby

**ORDERED**, that Petitioner's habeas petition (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available state court remedies, and it is

**ORDERED** that the Court makes no determination regarding the merits of any of the claims raised in the petition; and it is

**ORDERED** that no certificate of appealability shall issue in this case because Petitioner has failed to make a "substantial showing of the

denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

Date: January 23, 2012

_____
Gary L. Sharpe
Chief Judge
U.S. District Court